In The

# United States Court Of Appeals
### For The Fourth Circuit

## In re: POTOMAC SUPPLY CORPORATION

*Debtor.*

---

# CHESAPEAKE BAY ENTERPRISE, INC.,

*Plaintiff – Appellee,*

v.

# CHESAPEAKE TRUST,

*Defendant – Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT RICHMOND**

---

**BRIEF OF APPELLEE**

---

Steven S. Biss
ATTORNEY AT LAW
300 West Main Street
Suite 102
Charlottesville, VA 22903
(804) 501-8272

*Counsel for Appellee*

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. _____     Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____

(name of party/amicus)

_____

 who is _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?     YES     NO

2.      Does party/amicus have any parent corporations?                                YES     NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                          YES     NO
        If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?      YES      NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      YES      NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?      YES      NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _____      Date: _____

Counsel for: _____

## CERTIFICATE OF SERVICE
**************************

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____      _____
(signature)      (date)

# TABLE OF CONTENTS

Page No.

Table of Authorities …………………………………………….. iii

Statement of the Issue ……………………………………………... 1

    Standard of Appellate Review ……………………………… 2

Statement of the Case …………………………………………… 3

    Facts Relevant To The Issues Submitted For Review ……… 4

    Relevant Procedural History ………………………………... 7

Summary of the Argument ……………………………………… 10

Argument …………………………………………………….... 12

    A.    *THE DISTRICT COURT CORRECTLY
             INTERPRETED THE APA AND CORRECTLY
             RULED ON THE STIPULATED RECORD
             THAT THE $500,000 DEPOSIT MUST BE
             RETURNED TO CBE* …………………………. 12

        1.    *The District Court Properly Found
              That PSC's Failure To Serve Written
              Notice of Termination Precluded The
              Occurrence Of A Buyer Default
              Termination* ……………………………… 14

i

2.  *The District Court Properly Rejected
    The Trust/Pillsbury's Attempt To
    Repudiate the Joint Stipulations of Fact …*          16

Conclusion and Request for Relief …………………………………          18

Certificate of Service and Compliance ……………………………..          19

# TABLE OF AUTHORITIES

Page No.

*American Title Ins. Co. v. Lacelaw Corp.*,
  861 F.2d 224 (9th Cir. 1988) ……………………………...     3

*Arizona v. California*,
  460 U.S. 605 (1983) ……………………………………     9

*Bayview Loan Servicing, LLC v. Simmons*,
  275 Va. 114, 654 S.E.2d 898 (2008) ………………………     15

*Berry v. Klinger*,
  225 Va. 201, 300 S.E.2d 792 (1983) ………………………     13

*Capital Commercial Properties, Inc. v. Vina Enterprises, Inc.*,
  250 Va. 290, 462 S.E.2d 74 (1995) ………………………     12,13

*Christianson v. Colt Industries Operating Corp.*,
  486 U.S. 800 (1988) ……………………………………...     9

*D.C. McClain, Inc. v. Arlington County*,
  249 Va. 131, 452 S.E.2d 659 (1995) ………………………     13

*Doe v. Chao*,
  511 F.3d 461 (4th Cir. 2007) ……………………………...     8

*Fisher v. First Stamford Bank & Trust Co.*,
  751 F.2d 519 (2nd Cir. 1984) ……………………………..     3

*Graphic Arts Mutual Ins. Co. v. C. W. Warthen Co.*,
  240 Va. 457, 397 S.E.2d 876 (1990) ………………………     13

*Hagan v. McNallen (In re McNallen)*,
  62 F.3d 619 (4th Cir. 1995) ……………………………….     3

*In re Cobb*,
        431 B.R. 23 (Bankr. E.D. Va. 2010) ………………………        18

*In re Hartford Sands Inc.,* 372 F.3d 637 (4th Cir. 2004) ………...        3

*In re 1801 Robert Fulton Drive, LLC*,
        2012 WL 364251 (Bankr. E.D. Va. 2012) ………………..        12

*Little v. Cooke*,
        274 Va. 697, 652 S.E.2d 129 (2007) ……………………..        10

*Management Enterprises, Inc. v. Thorncroft Co., Inc.*,
        243 Va. 469, 416 S.E.2d 229 (1992) ………………………        13

*Marina Shores, Ltd. v. Cohn-Phillips, Ltd.*,
        246 Va. 222, 435 S.E.2d 136 (1993) ……………………..        12

*Mathews v. PHH Mortg. Corp.*,
        283 Va. 723, 724 S.E.2d 196 (2012) ………………………        15

*Megatech, Inc. v. NSD Acquisitions LP*,
        215 F.3d 1320 (Table) (4th Cir. 2000) ……………………        2

*Moore v. Va. Fire & Marine Ins. Co.*,
        69 Va. (28 Gratt.) 508 (1877) ………………………………        17

*Oertel v. Ransone*,
        1997 WL 33120364 (Fairfax Cir. 1997) …………………..        14,15

*Perini/Tompkins Joint Venture v. Ace American Ins. Co.*,
        738 F.3d 95 (4th Cir. 2013) ………………………………        2

*Richardson v. Director, Office of Workers' Comp. Programs*,
        94 F.3d 164 (4th Cir. 1996) ………………………………        3

<u>Page No.</u>

*Seabulk Offshore, Ltd. v. American Home Assur. Co.*,
    377 F.3d 408 (4th Cir. 2004) ……………………………...    2

*Sejman v. Warner-Lambert Co., Inc.*,
    845 F.2d 66 (4th Cir. 1988) ……………………………….    10

*Sprague v. Ticonic Nat'l Bank*,
    307 U.S. 161 (1939) ……………………………………...    9

*Turner v. Reed*,
    258 Va. 406, 518 S.E.2d 832 (1999) ………………………    17

*U.S. v. Bell*,
    5 F.3d 64 (4th Cir. 1993) …………………………………    9

*U.S. v. Lentz*,
    419 F.Supp.2d 843 (E.D. Va. 2006) ………………………...    3

*U.S. v. Wildes*,
    120 F.3d 468 (4th Cir. 1997) ……………………………….    17

*Winn v. Aleda Constr. Co., Inc.*,
    227 Va. 304, 315 S.E.2d 193 (1984) ………………………    14

1B J. Moore & T. Currier, ¶ 0.404 (1980) ………………………    9

1B J. Moore, J. Lucas, & T. Currier,
    Moore's Federal Practice ¶ 0.404[1] (1984) ……………...    9

*Black's Law Dictionary* 94 (6th ed. 1990) …………………………    17

# STATEMENT OF THE ISSUE[1]

On September 30, 2015, the United States District Court for the Eastern District of Virginia entered its Final Order [*JA 790-804*] reversing the Bankruptcy Court's judgment [*JA 228-249*]. In its accompanying Memorandum Opinion, the District Court ruled as follows:

> Even if CBE committed the first material breach of the APA, because PSC did not give written notice of termination, the APA directs that CBE is entitled to the Deposit.

...

> The plain language of Section 2.1.2[19] controls the outcome of the case at bar. As explained below, because PSC never issued a written notice of termination, Section 2.1.2 requires availability of the $500,000 Deposit to CBE.

…

> **Because Section 2.1.2 permitted delivery of the Deposit to PSC** *only* in the event of Closing or Buyer Default Termination, and neither event occurred, CBE is entitled to the Deposit.

[*JA 797, 799-800, 803-804 (Memorandum Opinion, pp. 8, 10-11 and 14-15) (emphasis in original)*].

The evidence and facts in this case were stipulated. [*JA 790 – "CBE and CT stipulated to the evidence in the bench trial before the Bankruptcy Court"*]. Joint

---

[1]  Appellee's Brief will refer to the Joint Appendix as "*JA*" and the page numbers of the Joint Appendix. *E.g., "JA 790"*.

Stipulations of Fact No. 41, accepted by the Bankruptcy Court [*see JA 803 fn. 25*], stated as follows:

> 41.    Potomac did not serve notice of default or termination of any kind on CBE. Potomac did not terminate the APA as a result of CBE's failure to pay the second $500,000 deposit by October 2, 2012.

This appeal presents but one issue:

1.    Did the District Court err in its interpretation of § 2.1.2 of the Asset Purchase Agreement ("APA"), where the stipulated proof was that no "Buyer Default Termination" was ever issued by Potomac Supply Corporation and no "Closing" occurred prior to the "Outside Date" – November 5, 2012?

### *Standard of Appellate Review*

The Court of Appeals reviews the District Court's decision on an issue of contract interpretation *de novo* and its factual findings for clear error *See, e.g. Perini/Tompkins Joint Venture v. Ace American Ins. Co.*, 738 F.3d 95, 102 (4th Cir. 2013) (citing *Seabulk Offshore, Ltd. v. American Home Assur. Co.*, 377 F.3d 408, 418 (4th Cir. 2004) ("We … review de novo a district court's decision on an issue of contract interpretation."); *Megatech, Inc. v. NSD Acquisitions LP*, 215 F.3d 1320 (Table), at * 2 (4th Cir. 2000) ("NSD's assumption of the liability to pay MMG's commissions hinges on the language of the Asset Purchase Agreement.

Issues of contractual interpretation are reviewed *de novo*."); *In re Hartford Sands Inc.,* 372 F.3d 637, 639 (4th Cir. 2004).

# STATEMENT OF THE CASE

This is a breach of contract action.

Appellee, Chesapeake Trust, invites the Court of Appeals to disregard Virginia law (*here*, the plain meaning rule), *and* the express terms of the APA (*here*, the unambiguous contract at issue), *and* the Joint Stipulations of Fact (*here*, freely and voluntarily assented to by the Trust).[2]

---

[2]     The binding effect of a factual stipulation on the parties at trial has been recognized by the Fourth Circuit Court of Appeals:

> "Before the [Administrative Law Judge], the Director clearly stipulated to the findings of fact in the deputy commissioner's award of lifetime benefits … *see Fisher v. First Stamford Bank & Trust Co.,* 751 F.2d 519, 523 (2nd Cir. 1984) ('[A] stipulation of fact that is fairly entered into is controlling on the parties and the court is bound to enforce it.') … The Director's stipulation and concession are binding on the parties and this court in this appeal. *See Hagan v. McNallen (In re McNallen),* 62 F.3d 619, 625 (4th Cir. 1995) (holding that concession before bankruptcy court was binding on appeal); *American Title Ins. Co. v. Lacelaw Corp.,* 861 F.2d 224, 226 (9th Cir. 1988) (stating that stipulations and admissions are binding on the parties and the court on appeal as well as at trial)."

*Richardson v. Director, Office of Workers' Comp. Programs,* 94 F.3d 164, 167 (4th Cir. 1996); *U.S. v. Lentz,* 419 F.Supp.2d 843, 844–45 (E.D. Va. 2006) ("It has therefore been held that '[s]tipulations as to facts freely and voluntarily entered into during trial are equivalent of proof and ... neither party will be heard to suggest that the facts were other than as stipulated.'") (citations omitted).

The District Court very carefully examined the contract at issue, with painstaking respect (evidenced by 26 footnotes) for the applicable provisions of the APA. The Trust's brief opens with hyperbole and rhetoric without evidentiary support – "CBE will get away with having caused more than $10 million in damages to the Debtor's bankruptcy estate." [*Doc 15 ("Appellant's Brief"), p. 2*].

Contrary to the Trust's argument, the District Court correctly concluded that "CBE is entitled to the Deposit".

## Facts Relevant To The Issues Submitted For Review

This appeal arises out of a dispute between CBE and the Trust regarding entitlement to the $500,000 deposit (the "Deposit") that CBE paid to debtor Potomac Supply Corporation ("PSC")[3] under the APA.

On January 20, 2012, PSC commenced a Chapter 11 bankruptcy case. Regions Bank was PSC's largest secured creditor. After several months of litigation, PSC, Regions Bank, and the other interested parties in the bankruptcy case "decided to work cooperatively in an effort to sell [PSC's] working assets." [*JA 792 (Joint Stipulations of Fact Nos. 2, 4, 5)*]. On July 27, 2012, PSC, by counsel, filed a motion regarding a potential auction of PSC's assets (the "Auction Procedures Motion"). On August 16, 2012, the Bankruptcy Court granted the

---

[3] The Trust is the assignee of PSC's right to the Deposit pursuant to a trust agreement (the "Trust Agreement") executed as part of the conversion of PSC's Chapter 11 bankruptcy to a Chapter 7 case upon the sale of PSC's assets to a third party. [*JA 727-736*].

Auction Procedures Motion and authorized PSC to conduct an auction of its assets. Simultaneously, PSC considered a private sale of its assets. [*JA 793 (Joint Stipulations of Fact Nos. 6, 8)*].

Between April 2012 and September 2012, PSC and CBE negotiated the sale of PSC's assets to CBE. [*JA 793 (Joint Stipulations of Fact No. 15)*]. On September 17 and September 18, 2012, CBE paid to PSC the $500,000 Deposit required in the APA. Thereafter, on September 21, 2012, PSC and CBE formally executed the APA. In the APA, CBE agreed to buy certain PSC assets for a purchase price of over $20 million. [*Id. (Joint Stipulations of Fact Nos. 16-18)*].

The APA provided for an outside closing date of 45 days after the effective date of the APA, which was November 5, 2012. [*JA 23 (APA § 3.2* ("The Closing shall be held within two (2) business days after both of the following conditions have been satisfied (the "Closing Date") … but in no event shall the Closing take place forty five (45) days after the Effective Date (the "Outside Date")). The APA contains no forfeiture clause. Section § 2.1.2 of the APA expressly states that:

> "The Deposit Escrow Holder shall return to Buyer [CBE] the Deposit (and any interest accrued thereon) … at the Outside Date, … and no Closing or Buyer Default Termination has occurred as of such date … The Deposit Escrow Holder shall deliver the Deposit (and any interest accrued thereon) to Seller [Potomac] upon the earlier of (A) Seller's termination of this Agreement under Section 4.3.2 as a result of the failure of a condition to Seller's obligations set forth in Section 4.1.1 (a "Buyer Default Termination"), or (B) the Closing."

[*JA 21*].

Within a few days of the APA's execution, the contemplated transaction fell apart because CBE lost its funding. On October 2, 2012, CBE's counsel notified PSC's counsel of the loss of funding and requested that PSC withdraw its motion in the Bankruptcy Court requesting approval of the sale to CBE and return of the Deposit. [*JA 793 (Joint Stipulations of Fact Nos. 33-35*]. Thereafter, CBE sought, and PSC granted, two extensions to the deadline to post a second $500,000 deposit. [*Id. (Joint Stipulations of Fact No. 36)*]. On October 12, 2012, CBE sought a further extension of the time to make the second $500,000 deposit under the APA. PSC did not accede to CBE's request for a third extension. [*Id. (Joint Stipulations of Fact No. 40)*]. CBE failed to post the second deposit by the extended deadline of October 12, 2012. Consequently, the Closing[4] never occurred. Nevertheless, PSC did not issue a written notice of termination to CBE, which was required under Section 4.3.2[5] of the APA in order for Buyer Default Termination[6] to occur. [*JA 794*].

---

[4]  "Closing" refers to the closing of the transaction intended by the APA, which was scheduled to take place within two business days of the satisfaction of the conditions in (1) Section 4 of the APA; and, (2) the commitment letter of Great Eastern Investment Fund, LLC. [*JA 23, 794 fn. 6*]. No party disputes that a Closing did not occur here.

[5]  Section 4.3.2 of the APA provides that termination of the agreement is completed "by delivering to the [defaulting party] written notice of termination." [*JA 27*].

Ultimately, PSC did not sell its assets to CBE. Instead, PSC sold them to a third party pursuant to a different purchase agreement. On November 13, 2012, the Bankruptcy Court: (1) approved the sale of PSC's assets to the third party purchaser; and, (2) settled remaining claims to PSC's bankruptcy estate, including the Deposit. On January 24, 2013, the Bankruptcy Court converted PSC's Chapter 11 bankruptcy proceeding to a Chapter 7 liquidation, and the Trust Agreement transferred PSC's interest in the Deposit to the Trust. The Trust Agreement named Pillsbury Winthrop Shaw Pittman, LLP ("Pillsbury") as the trustee of the Trust.[7] [*JA 794*].

## **Relevant Procedural History**

After the conversion of PSC's bankruptcy proceeding, CBE and the Trust litigated their competing claims to the Deposit and other issues in an adversary proceeding before the Bankruptcy Court. [*JA 794-795*].

Following a September 2014 bench trial, the Bankruptcy Court entered judgment in favor of the Trust on the Trust's Complaint for CBE's breach of the

---

[6]     Under the APA, Buyer Default Termination is defined as "[PSC's] termination of [the APA] under Section 4.3.2 as a result of the failure of a condition to [PSC's] obligations set forth in Section 4.1.1," which required that CBE maintain, to a material degree, all its representations, warranties, covenants, and obligations through Closing. [*JA 794 fn. 5*].

[7]     Pillsbury wore at least three (3) different hats in the transaction: (1) Pillsbury acted as legal counsel for PSC; (2) Pillsbury held the Deposit in its law firm trust account as a *de facto* escrow agent for PSC and CBE, the parties to the APA; and (3) Pillsbury acted as Trustee under the Trust Agreement.

APA, dismissed CBE's Counterclaim for the Trust's breach of the APA, and denied both parties' requests for legal fees. [*JA 795*]. The Bankruptcy Court made several Findings, ultimately concluding that: (1) CBE committed the first material, unwaived breach of the APA; (2) CBE's inability to close on the sale entitled the Trust to retain the Deposit; and, (3) neither party was entitled to attorneys' fees. [*JA 795*].

In its Final Order, the District Court ruled that "**Pillsbury retains the Deposit in its trust account**" and "**these funds remain available for distribution**." [*JA 795 (emphasis added)*].[8]  This ruling is the law of the case.[9]

---

[8]  At all times relevant to this action, the $500,000 Deposit was *not* property of the Bankruptcy Estate [*JA 720-721, 729*], and, contrary to the Trust's contention [*Appellant's Brief, p. 7*] the Deposit did not remain in Pillsbury's attorney trust account "for the benefit of the Debtor's creditors."  The funds remained in the law firm trust (IOLTA) account for the benefit of CBE and/or the Trust, whoever ultimately prevailed in the litigation.

[9]  During the pendency of CBE's appeal to the District Court, the Trust did not move to dismiss CBE's appeal on either constitutional or equitable mootness grounds. *See Doe v. Chao,* 511 F.3d 461, 465 (4th Cir. 2007) (On appeal, a party waives "any issue that could have been but was not raised" before the appellate court).  Indeed, the Trust and its counsel (Pillsbury) hid from the District Court the fact that the Deposit had been distributed out of Pillsbury's law firm trust account.  On November 24, 2015 – after a hearing was scheduled on CBE's motion for return of the Deposit – counsel for the Trust (Patrick Potter) revealed to the Bankruptcy Court and to counsel for CBE **for the first time** that, during the pendency of CBE's appeal, Pillsbury (the law firm) had secretly released the $500,000 from its attorney trust account, and delivered the funds to Pillsbury Trustee under the Trust Agreement.  Without Bankruptcy Court approval, Pillsbury Trustee then directed that the $500,000 be used to pay Pillsbury putative legal fees incurred in connection with the dispute with CBE over the Deposit.

*Arizona v. California*, 460 U.S. 605, 618 (1983) ("Unlike the more precise requirements of res judicata, law of the case is an amorphous concept. As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. See 1B J. Moore & T. Currier (hereinafter Moore), ¶ 0.404 (1980)); *see id. Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 816 (1988) ("This rule of practice promotes the finality and efficiency of the judicial process by 'protecting against the agitation of settled issues.'" 1B J. Moore, J. Lucas, & T. Currier, Moore's Federal Practice ¶ 0.404[1], p. 118 (1984)); *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993) ("Few legal precepts are as firmly established as the doctrine that the mandate of a higher court is 'controlling as to matters within its compass.' *Sprague v. Ticonic Nat'l Bank,* 307 U.S. 161, 168 (1939). Indeed, it is indisputable that a lower court generally is 'bound to carry the mandate of the upper court into execution and [may] not consider the questions which the mandate laid at rest.' *Id.* Because this 'mandate rule' is merely a 'specific application of the law of the case doctrine,' in the absence of exceptional circumstances, it compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court … In addition, the rule forecloses litigation of issues decided by the district court but foregone on appeal or otherwise waived, for example because

they were not raised in the district court … Thus, when this court remands for further proceedings, a district court must, except in rare circumstances, 'implement both the letter and spirit of the ... mandate, taking into account [our] opinion and the circumstances it embraces.'"); *Sejman v. Warner-Lambert Co., Inc.*, 845 F.2d 66, 68-69 (4th Cir. 1988) ("The law of the case doctrine is not an 'inexorable command' but rather a prudent judicial response to the public policy favoring an end to litigation … Clearly, courts could not perform their duties 'satisfactorily and efficiently ... if a question once considered and decided ... were to be litigated anew in the same case upon any and every subsequent appeal.'") (citations and quotations omitted); *see Little v. Cooke,* 274 Va. 697, 722, 652 S.E.2d 129 (2007) (holdings uncontested on appeal become "the law of the case").

CBE timely noted its appeal of the Bankruptcy Court's judgment. [*JA 795*].

On September 30, 2015, the District Court reversed the Bankruptcy Court, holding that CBE is "entitled to the Deposit." The District Court remanded the case to the Bankruptcy Court for further proceedings consistent with the District Court's opinion. [*JA 805*].

## SUMMARY OF THE ARGUMENT

The APA contains no provision for forfeiture of the $500,000 Deposit upon breach, but, rather, expressly, clearly and unambiguously requires the $500,000 to

be "return[ed] to Buyer [CBE] … at the Outside Date … [if] no Closing or Buyer Default Termination has occurred as of such date".  The facts were stipulated:

> 41.    Potomac did not serve notice of default or termination of any kind on CBE. Potomac did not terminate the APA as a result of CBE's failure to pay the second $500,000 deposit by October 2, 2012.

[*JA 803 fn. 25 (Joint Stipulations of Fact No. 41)*].[10]

Regardless if CBE was in default as of October 2, 2012, written notice of termination under and in accordance with the express terms of § 4.3.2 of the APA was an independent express condition precedent to delivery of the $500,000 to PSC.  Where the parties' admissions and stipulated facts established that "no Closing or Buyer Default Termination" had occurred as of the Outside Date, and PSC could not demonstrate satisfaction of the express conditions precedent in § 2.1.2 of the APA for delivery of the Deposit to PSC, the District Court correctly ruled that CBE is entitled to the Deposit under the plain meaning of the APA.

---

[10]    It does not appear that the Appellant included the Joint Stipulations of Fact in the Record on Appeal.  The Joint Stipulations of Fact were part of the record before the District Court, and appear as Doc 195 in the underlying Bankruptcy Case, No. 13-03073-BFK.

# ARGUMENT

## A. THE DISTRICT COURT CORRECTLY INTERPRETED THE APA AND CORRECTLY RULED ON THE STIPULATED RECORD THAT THE $500,000 DEPOSIT MUST BE RETURNED TO CBE

In this case, the parties' contract is the law of the case. In addressing the legal issues at hand, the District Court was guided by the familiar maxim that when the terms of a contract are clear and unambiguous, the terms will be given their plain and ordinary meaning. *Marina Shores, Ltd. v. Cohn-Phillips, Ltd.*, 246 Va. 222, 225-226, 435 S.E.2d 136 (1993)); *In re 1801 Robert Fulton Drive, LLC*, 2012 WL 364251, at * 5 (Bankr. E.D. Va. 2012) ("under Virginia's well-accepted rules of contract interpretation, the Court must look to the plain meaning of the contract, and the Court is not free to re-write the agreement of the parties …"Where an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself. This is so because the writing is the repository of the final agreement of the parties.") (citations and quotations omitted).

Under Virginia law, it is well-established that "where an agreement is complete on its face, [and] is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself." *Capital Commercial Properties, Inc. v. Vina Enterprises, Inc.*, 250 Va. 290, 294, 462 S.E.2d 74 (1995)

(quoting *Berry v. Klinger*, 225 Va. 201, 208, 300 S.E.2d 792 (1983)) (holding that plain language in option to extend agreement did not require landlord to notify tenant of any defaults that tenant had not cured during the period in which tenant could have exercised its option to extend). Indeed, the Court must interpret the agreement as it is written and is "not free to rewrite its terms." *Management Enterprises, Inc. v. Thorncroft Co., Inc.*, 243 Va. 469, 472, 416 S.E.2d 229 (1992) (quoting *Graphic Arts Mutual Ins. Co. v. C. W. Warthen Co.*, 240 Va. 457, 460, 397 S.E.2d 876 (1990)).[11] "This is so because the writing is the repository of the final agreement of the parties." *Capital Commercial Properties, Inc.*, 250 Va. at 294, 462 S.E.2d at 77 (quotation omitted).

Importantly, "[w]ords that the parties used are normally given their usual, ordinary, and popular meaning." *D.C. McClain, Inc. v. Arlington County*, 249 Va. 131, 135, 452 S.E.2d 659 (1995). "No word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly." *Id.* at 136, 452 S.E.2d at 662. Therefore, as is relevant in this matter, "[w]hen a contract provides for the performance of special conditions precedent before a party is entitled to payment, the conditions *must* be performed unless the other party prevents or

---

[11] The District Court correctly found that "[t]he APA does not contain a forfeiture provision or a liquidated damages provision." [*JA 797 fn. 16*].

waives their performance." *Winn v. Aleda Constr. Co., Inc.*, 227 Va. 304, 307, 315 S.E.2d 193 (1984) (emphasis added) (citation omitted).

Applying Virginia's well-established rules of contract interpretation, the District Court correctly concluded that "this case rides on the plain language of the APA. Even if CBE committed the first material breach of the APA, because PSC did not give written notice of termination, the APA directs that CBE is entitled to the Deposit." The District Court correctly found:

> "While many contracts state – or presume – that a party, like CBE, who fails to deliver full financing loses its deposit, the APA at bar provided otherwise because it unmistakably required the seller, PSC, to give written notice of termination if CBE were to breach as it did here. Accordingly, this Court must reverse the aspect of the Bankruptcy Court's decision finding that PSC's failure to issue a written notice of termination did not necessitate return of the Deposit to CBE. This case is remanded for further proceedings not inconsistent with this opinion."

[*JA 797*].

## 1. *The District Court Properly Found That PSC's Failure To Serve Written Notice of Termination Precluded The Occurrence Of A Buyer Default Termination*

The District Court properly found that service of notice of termination (Buyer Default Termination) was not a "useless act". It was an independent express condition precedent to PSC's right to keep the $500,000. *See, e.g., Oertel v. Ransone*, 1997 WL 33120364, at * 1 (Fairfax Cir. 1997) ("Oertel's contention that the Defendant's breach made useless his terminating the contract is without

merit. Under Virginia law, unless contrary to public policy, the contract, itself, provides the framework for legal analysis … Generally, there exists a presumption that parties have not used words needlessly … While the Plaintiff argues that no one should be required by law to do a useless act, it is the Plaintiff who imposed the burden upon himself to terminate for failure to perform prior to invoking the terms of Article 15.1. In as much as he was bound to render performance on the Contract as a whole, he was bound by this provision as well. Thus, terminating the Contract as a condition precedent to seeking recovery of sums paid out in draws cannot fairly be interpreted as a useless act.") (many citations omitted); *compare Bayview Loan Servicing, LLC v. Simmons*, 275 Va. 114, 121, 654 S.E.2d 898 (2008) ("Because Bayview did not comply with the specific condition precedent under the Deed of Trust, prior to the notice of foreclosure sale by Specialized, Bayview had not acquired the right to accelerate payment under the terms of the Deed of Trust."); *see id. Mathews v. PHH Mortg. Corp.*, 283 Va. 723, 733, 724 S.E.2d 196 (2012) ("Borrowers may sue to enforce conditions precedent to foreclosure even if they were the first party to breach the note secured by a deed of trust through non-payment.").

Section 2.1.2 clearly and unambiguously states that the Deposit "shall" absolutely be returned to the Buyer (CBE) "at the Outside Date" if "no Closing or

Buyer Default Termination has occurred as of such date". The District Court properly honored the plain meaning of the APA.[12]

## 2. *The District Court Properly Rejected The Trust/Pillsbury's Attempt To Repudiate the Joint Stipulations of Fact*

Joint Stipulations of Fact No. 41 was clear, unambiguous, voluntarily agreed to and fully binding upon the Trust, *and* it was adopted by the Bankruptcy Court.

The entire Stipulation bears repeating because it was signed by counsel for the Trust in accordance with Rule 9011 of the Federal Rules of Bankruptcy Procedure and it was filed by counsel for the Trust:

---

[12]     The District Court found as follows:

"The written notice requirement was not, as PSC contends on appeal, a 'futile and purposeless' act in light of what it characterizes as CBE's October 2, 2012 repudiation … Indeed, as evidenced by the parties' course of conduct, both CBE and PSC continued to treat their obligations as ongoing following CBE's notification that its funding fell through … Moreover, the mutually agreed upon extensions of the APA are likewise fatal to PSC's argument that negotiations following the alleged October 2, 2012 repudiation reflected the creation of a new agreement. The parties explicitly extended '[a]ll of the provisions of the [APA] ... in full force and effect in accordance with their original terms" on October 5, 2012 … and again on October 10, 2012".

[*JA 803 fn. 25*]. The parties' course of dealing between October 2, 2012 and the Outside Date was consistent with § 3.2 of the APA, which stated: "Until this Agreement is either terminated or the parties have agreed upon an extended Closing Date, the parties shall diligently continue to work to satisfy all conditions to Closing." [*JA 23*].

> 41. Potomac did not serve notice of default or termination of any kind on CBE. Potomac did not terminate the APA as a result of CBE's failure to pay the second $500,000 deposit by October 2, 2012.

The word "any", as used in Joint Stipulations of Fact No. 41, is a term of exceptional breadth. *See U.S. v. Wildes*, 120 F.3d 468, 470 (4th Cir. 1997) ("'any' is a term of great breadth. *See Black's Law Dictionary* 94 (6th ed. 1990) (defining 'any' to mean '[s]ome; one out of many; an indefinite number ... [that] is often synonymous with 'either', 'every', or 'all'). 'Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'") (quotation and citations omitted); *compare Turner v. Reed*, 258 Va. 406, 409, 518 S.E.2d 832 (1999) ("The word 'all' means: 'The whole number or sum [when] used collectively with a plural noun or pronoun expressing an aggregate.' Black's Law Dictionary 74 (6th ed. 1990)); *Moore v. Va. Fire & Marine Ins. Co.*, 69 Va. (28 Gratt.) 508, 516 (1877) ("A more comprehensive word than 'all' cannot be found in the English language").

The District Court fully considered the entire Record and correctly found that "[a]s stipulated by the parties before the Bankruptcy Court, PSC failed to deliver to CBE a written notice of termination." [*JA 803*].

The Trust's argument on appeal [*Appellant's Brief, pp. 10-13*] is an unadultered attempt to repudiate Joint Stipulation No. 41. However, it is

universally recognized that "the effect of a trial stipulation is certain and binds the parties thereto." *In re Cobb*, 431 B.R. 23, 34 fn. 10 (Bankr. E.D. Va. 2010).

<h2 style="text-align:center"><u>CONCLUSION AND REQUEST FOR RELIEF</u></h2>

For the reasons stated above, the Court of Appeals should affirm the District Court's final judgment entered September 30, 2015, award CBE its costs on appeal, and remand the matter to the Bankruptcy Court for a determination of legal fees incurred in connection with this appeal pursuant to § 11.1 of the APA.

DATED:    January 25, 2016

Respectfully Submitted,

CHESAPEAKE BAY ENTERPRISES INC.

By:   */s/Steven S. Biss*
  Steven S. Biss (VSB # 32972)
  300 West Main Street, Suite 102
  Charlottesville, Virginia 22903
  Telephone:  (804) 501-8272
  Facsimile:      (202) 318-4098
  Email:            stevenbiss@earthlink.net

  *Counsel for Appellee, CBE*

**CERTIFICATE OF SERVICE AND COMPLIANCE**

I hereby certify that on January 25, 2016 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for the Appellant and all interested parties receiving notices via CM/ECF.

I further certify that on January 25, 2016, I caused the required copies of Appellee's Brief to be filed with the Clerk of the Court of Appeals.

By:    */s/Steven S. Biss*
     Steven S. Biss (VSB # 32972)
     300 West Main Street, Suite 102
     Charlottesville, Virginia 22903
     Telephone:  (804) 501-8272
     Facsimile:   (202) 318-4098
     Email:         **stevenbiss@earthlink.net**

     *Counsel for Appellee, CBE*